**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

WINDSTREAM CORPORATION,                                                    PLAINTIFFS
WINDSTREAM BENEFITS COMMITTEE,
WINDSTREAM SYSTEMS OF THE
MIDWEST, INC., and VALOR
TELECOMMUNICATIONS OF TEXAS, L.P.,
d/b/a Windstream Communications Southwest

v.                                          No. 4:09CV00953 JLH

JOHNNY LEE, *et al.*, individually and as
representatives of persons similarly situated                               DEFENDANTS

## OPINION AND ORDER

The issue underlying the instant motion is whether Valor Telecommunications of Texas, L.P., d/b/a Windstream Communications Southwest, had the contractual right unilaterally to modify the allocation of the cost of premiums for healthcare insurance between itself and its retirees. This Court previously held, based on the unambiguous language of the relevant contractual documents, that Valor had that contractual right. Therefore, a cross complaint filed by Communications Workers of America, AFL-CIO, alleging to the contrary, was dismissed. CWA has now filed a motion to reconsider. That motion will be denied.

The pertinent language of the relevant contractual documents, and the reasoning of the Court based thereon, were explained at length in the Court's prior opinion. It would serve no useful purpose to restate in detail either the relevant terms of the contractual documents, or the Court's reasoning supporting the conclusion that the unambiguous provisions of those documents gave Valor the right unilaterally to modify the premium cost allocation. Because those matters have been thoroughly articulated, a summary will suffice here.

The relevant documents are three memoranda of agreement, incorporated into three corresponding collective bargaining agreements between Valor and CWA, and the summary plan

descriptions. The memoranda were in effect from March 1, 2002, through February 28, 2005; from March 1, 2005, through February 28, 2008; and March 1, 2008, through February 28, 2011, respectively. Each of the memoranda includes a paragraph stating the percentage of the healthcare premium that would be paid by Valor and by the retiree. In each instance, that paragraph stated that the allocation of the premium cost would last "during the term of this memorandum of agreement." Hence, the provision upon which CWA relies to establish a vested right to the stated allocation of the premium cost specifically limits the term of that allocation to the term of the memorandum of agreement, which in each instance was three years. In addition, each of the memoranda contained a provision stating that all terms and conditions related to the level and administration of retiree benefits, the amount or cost of premiums, the premium pricing mechanisms, as well as the resolution of any disputes involving the terms, conditions, interpretation, administration, or benefits payable would rest with Valor.

Valor unilaterally modified the premium cost allocation on July 1, 2010, when the memorandum of agreement then in effect included a paragraph that required Valor to notify CWA if it decided to modify or rescind the healthcare plan for retirees. That paragraph provided, however, that if the parties were unable to reach an agreement, the retiree medical benefits could be modified or rescinded at Valor's discretion. Valor gave notice pursuant to that provision, there was a negotiation that failed to reach an agreement, and Valor then unilaterally modified the premium cost allocation. Finally, throughout the relevant period of time, the plan documents expressly stated that Valor reserved the right to terminate, amend, or replace the plan at any time. Collectively, these provisions of the relevant documents unambiguously granted Valor the right unilaterally to modify the premium cost allocation for retiree medical benefits.

As noted, in the Opinion and Order granting Valor's motion to dismiss, the Court recounted in detail the language of the relevant provisions and explained why they lead inexorably to the conclusion that Valor had the contractual right unilaterally to modify the premium cost allocation. After doing so, the Court rejected an argument that CWA had made based on extrinsic evidence. The Court rejected that argument because the terms of the agreements were unambiguous, so it would be improper to consider extrinsic evidence to determine their meaning. Much of CWA's brief in support of its motion for reconsideration addresses that issue.

CWA cites *John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers, AFL-CIO*, 913 F.2d 544, 551 (8th Cir. 1990), for the proposition that extrinsic evidence can be admitted to demonstrate that an ambiguity exists. CWA's reliance on *John Morrell* is misplaced. As noted, the relevant provisions unambiguously reserved to Valor the right unilaterally to change the premium cost allocation. CWA's argument essentially is that extrinsic evidence can be introduced to show that Valor did not reserve the right unilaterally to change the premium cost allocation. In *John Morrell*, however, the Court said that extrinsic evidence may not be considered to contradict the intent of the parties as expressed in the written agreement. *Id*. Adopting CWA's argument would permit extrinsic evidence to contradict the parties' intent expressed in the written agreements.

Even if the proffered extrinsic evidence were considered on the issue of whether an ambiguity exists, that evidence would not alter the outcome. According to *John Morrell*:

> To determine whether there is an ambiguity, we must examine the relevant extrinsic evidence and decide whether the contractual language is reasonably susceptible of the meaning proposed by the party asserting the ambiguity.

*Id*. According to CWA, although Valor reserved the right to amend, modify, or terminate the plan, it did not reserve the right to adjust the allocation of the premium costs. Thus, CWA argues that the

3

allocation of the premium costs could never be changed even though Valor could terminate the plan at any time.  The contractual documents cannot reasonably be interpreted to mean what CWA contends they mean, even if extrinsic evidence were considered.  ERISA plan documents are construed according to the law of trusts, and the power to revoke a trust includes the power to modify it.  *Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 872, 877 (8th Cir. 2009); Restatement (Third) of Trusts § 63 cmt. g (2003).

The extrinsic evidence upon which CWA relies includes memoranda of agreement between GTE Southwest (from which Valor purchased the business at issue) and CWA, and the course of negotiations for the memoranda of agreement in effect during Valor's ownership of the company. CWA's argument regarding the extrinsic evidence can be boiled down to two points.  First, the later GTE memoranda of agreement expressly included former employees who retired during the terms of prior memoranda, but Valor's memoranda did not; yet Valor continued to provide medical benefits to retirees even after the expiration of the memoranda of agreement under which those former employees had retired.  Secondly, during negotiations between Valor and CWA, including the negotiations regarding the premium cost allocation, Valor never stated to CWA that it believed that it had reserved the right unilaterally to modify the premium cost allocation.

Regardless, none of the extrinsic evidence tends to show an ambiguity in any of the relevant terms of the contractual documents.  None of the extrinsic evidence could show that the premium cost allocation was intended to survive the expiration of the memorandum of agreement in the face of express provisions to the contrary within each memoranda.  None of the extrinsic evidence tends to show that there is some ambiguity in the provision stating that "all terms and conditions" relating to the level and administration of retiree medical benefits, the amount or cost of premiums, or premium pricing mechanisms, would rest solely with Valor.  CWA argues that the extrinsic evidence

4

upon which it relies demonstrates that the phrase "level of . . . Benefits" in paragraph 6 of the memoranda is a term of art that does not include Valor's contribution to the cost of retiree healthcare premiums. Even if that is true, the remainder of the paragraph reserves to Valor decisions pertaining to all terms and conditions relating to the premiums. That broad language includes premium cost allocation. Moreover, as noted, the right to terminate the plan includes the right to modify it. None of the extrinsic evidence tends to show that there is any ambiguity in the summary plan documents that reserve the right on the part of Valor to amend, modify, or terminate the plan at any time.

CWA cites *Local Union No. 150-A, United Food & Commercial Workers Int'l Union, AFL-CIO, CLC v. Dubuque Packing Co.*, 756 F.2d 66 (8th Cir. 1985), for the proposition that language in an agreement creating an independent obligation to provide benefits without reference to prior agreements creates an ongoing, vested obligation for retiree medical benefits. In *Dubuque Packing*, as here, the company and the union had a series of three-year agreements that included provisions relating to retiree benefits. The first two specifically reaffirmed the medical benefits of past retirees, but the third one did not address the issue. According to CWA, *Dubuque Packing* held that an ambiguity justifying resort to extrinsic evidence is created where a company agrees that medical benefits of retirees would be continued but then eliminates the provision providing for continued benefits from a subsequent agreement while nevertheless continuing to make payments.

*Dubuque Packing* is not on point. In *Dubuque Packing*, the issue was whether medical benefits of retirees had vested, and the relevant documents were ambiguous on that point. Thus, the court looked to the contract language and course of conduct to determine whether medical benefits of retirees had vested. The court found, "there are many indications in the agreements and course of dealing that the parties intended the right to benefits would vest upon retirement." *Id*. at 70. Here, the issue is not whether the medical benefits for retirees themselves vested; instead, the issue

is whether Valor could unilaterally modify the premium cost allocation. All three of the memoranda state that the premium cost allocation would be in effect during the term of the memorandum, which is inconsistent with the conclusion that the agreement as to the premium cost allocation would survive the expiration of the agreement. *See Crown Cork & Seal Co., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 501 F.3d 912, 917-18 (8th Cir. 2007). In addition, Valor expressly reserved the power to make decisions regarding all terms and conditions related to premium costs. Furthermore, Valor consistently reserved the right to amend, modify, or terminate the plan. Again, collectively these provisions in the contract documents unambiguously demonstrate that Valor had the right unilaterally to amend the premium cost allocation. Further, unlike in *Dubuque Packing* wherein the court found that the extrinsic evidence showed that the parties intended the medical benefits for past retirees to vest, here the extrinsic evidence does not show that the parties intended premium cost allocation to vest permanently. *Id*. at 917-18. Consequently, *Dubuque Packing* does not control.

The motion for reconsideration is denied. Document #160.

IT IS SO ORDERED this 14th day of March, 2012.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE